UNITED STATES DISTRICT COURT
<u>WESTERN DISTRICT OF NEW YORK</u>

| | | |
|---|---|---|
| JEAN D., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case # 1:20-CV-120-DB |
| | § | |
| COMMISSIONER OF SOCIAL SECURITY, | § | MEMORANDUM DECISION |
| | § | AND ORDER |
| Defendant. | § | |

## <u>INTRODUCTION</u>

Plaintiff Jean D. ("Plaintiff") brings this action pursuant to the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner") that denied her application for supplemental security income ("SSI") under Title XVI of the Act. *See* ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c), and the parties consented to proceed before the undersigned in accordance with a standing order (*see* ECF No. 12).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* ECF Nos. 7, 8. Plaintiff also filed a reply. *See* ECF No. 11. For the reasons set forth below, Plaintiff's motion for judgment on the pleadings (ECF No. 7) is **DENIED**, and the Commissioner's motion for judgment on the pleadings (ECF No. 8) is **GRANTED.**

## <u>BACKGROUND</u>

On May 21, 2014, Plaintiff protectively filed her SSI application, alleging disability beginning June 30, 2013 (the disability onset date) due to "depression, degenerative disc disease, sciatica, thyroid nodule, HBP, high cholesterol, diabetes, migraine and herniated disc." Transcript ("Tr.") 16, 172-77, 199. Plaintiff's claim was denied initially on August 4, 2015, after which she requested an administrative hearing Tr. 16. On October 20, 2017, Administrative Law Judge Paul

Georger (the "ALJ") conducted a hearing in Buffalo, New York. Tr. 16. Plaintiff appeared and testified at the hearing and was represented by Albert V. Lowman, an attorney. *Id*. Lanell R. Hall, an impartial vocational expert ("VE"), also appeared and testified at the hearing.

The ALJ issued an unfavorable decision on February 27, 2018, finding that Plaintiff was not disabled. Tr. 16-25. On November 14, 2018, the Appeals Council denied Plaintiff's request for further review. Tr. 4-6. The ALJ's February 27, 2018 decision thus became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

## LEGAL STANDARD

### I.   District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1990).

### II.   The Sequential Evaluation Process

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ

2

proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments meeting the durational requirements, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id*. § 404.1509. If not, the ALJ determines the claimant's residual functional capacity, which is the ability to perform physical or mental work activities on a sustained basis notwithstanding limitations for the collective impairments. *See id*. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id*. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## ADMINISTRATIVE LAW JUDGE'S FINDINGS

The ALJ analyzed Plaintiff's claim for benefits under the process described above and made the following findings in his February 27, 2018 decision:

1. The claimant has not engaged in substantial gainful activity since May 21, 2014, the application date (20 CFR 416.971 *et seq*.);

2. The claimant has the following severe impairments: cervical spondylosis, status post discectomy and fusion surgery, right carpal tunnel syndrome, anxiety and depression (20 CFR 416.920(c));

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926);

4. The claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b)[1] except she can sit, stand and walk for six hours in an eight hour working day; she can occasionally climb ramps and stairs, climb ladders, ropes, or scaffolds, balance, stoop, kneel, crouch and crawl; she is limited to perform simple, routine tasks and limited to simple work-related decisions; she can occasionally respond appropriately to supervisors, coworkers and the public; and, she can occasionally dealing with changes in the work setting;

5. The claimant has no past relevant work (20 CFR 416.965);

6. The claimant was born on April 21, 1963 and was 51 years old, which is defined as an individual closely approaching advanced age, on the date the application was filed (20 CFR 416.963);

7. The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964);

8. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968);

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a));

---

[1] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities. If someone can do light work, [the SSA] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

10. The claimant has not been under a disability, as defined in the Social Security Act, since May 21, 2014, the date the application was filed (20 CFR 416.920(g)).

Tr. 16-25.

Accordingly, the ALJ determined that, based on the application for supplemental security benefits filed on May 21, 2014, the claimant is not disabled under section 1614(a)(3)(A) of the Act. Tr. 25.

## **ANALYSIS**

Plaintiff's sole argument is that the ALJ's RFC finding is deficient because the ALJ did not give significant weight to any medical source opinion of record. *See* ECF No. 9-1 at 8-15. The Commissioner argues in response that the ALJ correctly analyzed the medical evidence in accordance with the applicable regulations, and his RFC determination was supported by substantial evidence. *See* ECF No. 8-1 at 8-15.

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir.2000). Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. The Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa*, 168 F.3d at 77. Upon review of the record in this case, the Court finds that, the ALJ properly considered the entire record, and his determination that Plaintiff retained the RFC for a range of light, unskilled work was supported by substantial evidence.

A claimant's RFC is the most she can still do despite her limitations and is assessed based on an evaluation of all the relevant evidence in the record. *See* 20 C.F.R. §§ 404.1520(e), 404.945(a)(1), (a)(3); SSR 96-8p, 61 Fed. Reg. 34,474-01 (July 2, 1996). At the hearing level, the ALJ has the responsibility of assessing the claimant's RFC. *See* 20 C.F.R. § 404.1546(c); SSR 96-

5p, 61 Fed. Reg. 34,471-01 (July 2, 1996); *see also* 20 C.F.R. § 404.1527(d)(2) (stating the assessment of a claimant's RFC is reserved for the Commissioner). Determining a claimant's RFC is an issue reserved to the Commissioner, not a medical professional. *See* 20 C.F.R. § 416.927(d)(2) (indicating that "the final responsibility for deciding these issues [including RFC] is reserved to the Commissioner"); *Breinin v. Colvin*, No. 5:14-CV-01166(LEK TWD), 2015 WL 7749318, at *3 (N.D.N.Y. Oct. 15, 2015), *report and recommendation adopted*, 2015 WL 7738047 (N.D.N.Y. Dec. 1, 2015) ("It is the ALJ's job to determine a claimant's RFC, and not to simply agree with a physician's opinion.").

Furthermore, the ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [i]s consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (citing *Richardson v. Perales*, 402 U.S. 389, 399 (1971) (the RFC need not correspond to any particular medical opinion; rather, the ALJ weighs and synthesizes all evidence available to render an RFC finding consistent with the record as a whole); *Castle v. Colvin*, No. 1:15-CV-00113 (MAT), 2017 WL 3939362, at *3 (W.D.N.Y. Sept. 8, 2017) (The fact that the ALJ's RFC assessment did not perfectly match a medical opinion is not grounds for remand.). Indeed, an ALJ may formulate an RFC absent any medical opinions. "Where, [] the record contains sufficient evidence from which an ALJ can assess the [plaintiff's] residual functional capacity, a medical source statement or formal medical opinion is not necessarily required." *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) (internal citations and quotation omitted).

Additionally, the burden to provide evidence to establish the RFC lies with Plaintiff—not the Commissioner. *See* 20 C.F.R. §§ 404.1512(a), 416.912(a); *see also Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) ("The applicant bears the burden of proof in the first four steps of the sequential inquiry . . . ."); *Mitchell v. Colvin*, No. 14-CV-303S, 2015 WL 3970996, at *4

(W.D.N.Y. June 30, 2015) ("It is, however, Plaintiff's burden to prove his RFC."); *Poupore v. Astrue*, 566 F.3d 303, 305-06 (2d Cir. 2009) (The burden is on Plaintiff to show that she cannot perform the RFC as found by the ALJ.).

Plaintiff asserts that the ALJ cannot interpret "raw" medical findings without the assistance of a medical source. *See* ECF No. 7-1 at 8. However, nothing in the Act, the regulations, or any Agency rulings indicates that the ALJ must rely on a medical source opinion in assessing RFC. *See* 20 C.F.R. §§ 404.1512 (b)(6), 416.912(b)(6); 20 C.F.R. §§ 404.1512(d),(d)(1), 416.912(d)(d)(1) (While the Agency will seek an RFC-relevant medical source opinion from any acceptable medical sources who have examined or treated her, "the lack of the medical source statement will not make the report incomplete."). As noted above, medical opinion evidence is not the sole driver of formulation of the RFC. Rather, the regulations require the ALJ to assess a claimant's RFC "based on all the relevant evidence in [the claimant's] case record," and further explain that such evidence includes objective medical evidence (i.e., medical signs or laboratory findings), medical opinions, medical history, clinical findings, prescribed treatment, and the claimant's own descriptions of his or her limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); *see also* 20 C.F.R. §§ 404.1513(a)(1)-(5), 416.913(a)(1)-(5). The ALJ did so in this case.

The medical findings in this case are not terribly complex. In support of the RFC assessment, the ALJ cited a variety of evidence, including normal examination findings and imaging with respect to Plaintiff's physical impairments; minimal treatment with respect to her mental impairments; and significant daily activities with respect to both. With respect to Plaintiff's neck/upper extremity impairment, the ALJ pointed out that even before her surgery, Plaintiff's treating neurologist observed relatively normal findings, including full upper extremity strength, and normal/mild findings on EMG and MRI. Tr. 21-22 (citing 1416-17, 1462-68, 1522, 1526).

The pre-surgical EMG found no evidence of radiculopathy and only mild median mononeuropathy at the wrist. Tr. 1401-02, 1505. Thus, while there was some abnormality in the neck discs, as confirmed by an MRI, it did not affect her upper body. Tr. 1303, 1464-65.

In March 2016, Plaintiff underwent a C5-C6, C6-C7 anterior cervical fusion and discectomy. Tr. 1423-25. Following surgery, all cervical imaging was normal. Tr. 1466-67, 1594-95, 1586, 1589. The ALJ also noted that following surgery, Plaintiff reported improvement, and ultimately, resolution, of her neck pain and right upper extremity symptoms, and she ultimately discontinued pain medications. Tr. 22-23 (citing Tr. 1451, 1541-42, 1544-45, 1547-48, 1584-88). Numerous physical examinations after Plaintiff's surgery revealed completely normal findings.

Regarding Plaintiff's mental impairments, her mental status findings were typically normal, with just a few mood abnormalities and a single affect abnormality. Tr. 667, 699, 704, 707, 870, 882, 926, 1021, 1045, 1073, 1105, 1369, 1375, 1407, 1410, 1459, 1471, 1475, 1481, 1552, 1564, 1572. In addition to noting typically normal mental status examinations, the ALJ noted that Plaintiff received conservative treatment in the form of medications and counseling. Tr. 22 (citing Tr. 1550-54). A pattern of conservative treatment weighs against complaints of disabling symptoms. *See Netter v. Astrue*, 272 F. App'x 54, 56 (2d Cir. 2008) (holding that it is proper for an ALJ to cite a claimant's conservative treatment history to support his conclusion that he or she is not disabled); *Shaffer v. Colvin*, No. 1:14-CV-00745 (MAT), 2015 WL 9307349, at *5 (W.D.N.Y. Dec. 21, 2015) (holding that the ALJ properly discredited the plaintiff's claims of a disabling condition noting that her treatment was essentially routine and conservative, consisting of medication management and physical therapy).

The ALJ also noted that Plaintiff's mental health symptoms were worsened by situational stressors. Tr. 22. For example, in late September 2016, Plaintiff had a temporary increase in her

symptoms after she had a physical altercation with her boyfriend which led to her boyfriend being jailed. Tr. 1469. She said she no longer felt safe; her mood had worsened; and she had occasional panic attacks that responded to Xanax, *Id*. At the end of 2016, she reported "continued situational stressors [related to] dealing with family drama which makes her aggravated." Tr. 1551. "Situational stressors are not a basis for a finding of disability and may be considered when evaluating a claimant's subjective reports." *Taillon v. Comm'r of Soc. Sec.*, No. 17-CV-6812, 2019 WL 1396837, at *4 (W.D.N.Y. Mar. 28, 2019) (citing *Morgan v. Colvin*, No. 14-CV-0549, 2016 WL 3527906, at *15 (N.D.N.Y. June 23, 2016).

The ALJ also considered that, despite her claims of disabling impairments, Plaintiff admitted being able to engage in her activities of daily living with little help. Tr. 23. *See* 20 C.F.R. § 404.1529(c)(3)(i) (An ALJ may consider the nature of a claimant's daily activities in evaluating the consistency of allegations of disability with the record as a whole.); *see also Ewing v. Comm'r of Soc. Sec.*, No. 17-CV-68S, 2018 WL 6060484, at *5 (W.D.N.Y. Nov. 20, 2018) ("Indeed, the Commissioner's regulations expressly identify 'daily activities' as a factor the ALJ should consider in evaluating the intensity and persistence of a claimant's symptoms.") (citing 20 C.F.R. § 416.929(c)(3)(i)); *Poupore*, 566 F.3d at 307 (claimant's abilities to watch television, read, drive, and do household chores supported ALJ's finding that his testimony was not fully credible). As the ALJ pointed out, Plaintiff lived alone, drove, did chores, such as cooking, cleaning, and laundry, cared for a pet cat, and enjoyed her grandchildren. Tr. 21-24 (citing Tr. 48-49, 1385). The ALJ also observed that Plaintiff worked only sporadically prior to the alleged disability onset date, which calls into question whether Plaintiff's continuing unemployment was actually due to

medical impairments.[2] Tr. 23, 178. Based on the foregoing, the ALJ properly found that Plaintiff's allegations of debilitating symptoms, were not supported by the evidence in the record.

As previously explained, it is ultimately Plaintiff who bears the burden of proving that her RFC is more restricted than that found by the ALJ, whereas the Commissioner need only show that the ALJ's decision was supported by substantial evidence in the record. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019); *Poupore*, 566 F.3d at 306; *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012). Moreover, under the substantial evidence standard of review, it is not enough for Plaintiff to merely disagree with the ALJ's weighing of the evidence or to argue that the evidence in the record could support his position. The substantial evidence standard is "a very deferential standard of review—even more so than the 'clearly erroneous' standard," and the Commissioner's findings of fact must be upheld unless "a reasonable factfinder would *have to conclude* otherwise."). *Brault*, 683 F.3d at 448 (emphasis in original). Thus, Plaintiff must show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in the record. *Id*. at 448; *see also Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir. 1991) (reviewing courts must afford the Commissioner's determination considerable deference and cannot substitute its own judgment even if it might justifiably have reached a different result upon a *de novo* review). Plaintiff here has failed to meet this burden.

For all these reasons, the Court finds that the ALJ appropriately considered the evidence of record, and the ALJ's determination was supported by substantial evidence. Accordingly, the Court finds no error.

---

[2] Although Plaintiff alleges disability beginning in 2013, earnings records indicate that she stopped working at the substantial gainful activity level in 2006, reporting no income at all during most years thereafter. Tr. 178.

## <u>CONCLUSION</u>

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 7) is **DENIED**, and the Commissioner's Motion for Judgment on the Pleadings (ECF No. 8) is **GRANTED**. Plaintiff's Complaint (ECF No. 1) is **DISMISSED WITH PREJUDICE**. The Clerk of Court will enter judgment and close this case.

**IT IS SO ORDERED**.

DON D. BUSH
UNITED STATES MAGISTRATE JUDGE